IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES A. OWENS                                                    PLAINTIFF

V.                                           CAUSE NO. 3:13CV366-LG-JCG

L-3 COMMUNICATIONS VERTEX
AEROSPACE, LLC                                                  DEFENDANT

<u>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION</u>

BEFORE THE COURT is the [19] Motion to Compel Arbitration filed by

Defendant L-3 Communications Vertex Aerospace, LLC (hereinafter "L-3").

Plaintiff James Owens has responded in opposition to the Motion, and L-3 has filed

a reply.  Having reviewed the pleadings and the relevant law, it is the opinion of the

Court that this Title VII case should not be referred to arbitration.  Accordingly, the

Motion to Compel Arbitration is denied.

BACKGROUND

This lawsuit arises out of Plaintiff Owens's employment with Defendant L-3.

Owens worked for L-3's operations in Kuwait during the years 2006 through 2010,

until he was terminated.  The Complaint alleges that L-3 subjected Owens to a

racially hostile work environment, and to retaliation based on his race, in violation

of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et*

*seq*. (Compl. 4-12 (¶¶19-52), ECF No. 1).

Owens was terminated from his employment with L-3 in October 2010.  The

grounds for his termination, according to L-3, were that Owens had driven a

company vehicle off of the base without authorization several months earlier.  L-3

pointed to the fact that a parking ticket had been issued to the company vehicle at a location some thirty-five miles away from the work site on July 6, 2010. Owens's Complaint states that L-3 had questioned him about the parking ticket in July, and he had denied that the vehicle had left the base, and claimed no knowledge of the ticket. (Compl. 5-6 (¶¶25-26)).

Owens sought a review of his termination pursuant to L-3's internal procedures. L-3 had an Alternative Dispute Resolution Program ("ADR Program"), under which employees were to resolve "covered complaints, disputes, and claims" through a three-step process. (ADR Program 6 (¶7), Def. Ex. 1, ECF No 20-1). That three-step process included "a Management Review Panel, Mediation, and if necessary . . . Final and Binding Arbitration." (*Id.*) A Management Review Panel conducted a hearing in March 2011, and issued a determination in favor of Owens, which ordered that he be reinstated to "his former position." (Decision & Order, Compl. Ex. 17, ECF No. 1-17).

Following the Management Review Panel's decision in May 2011, L-3 communicated with Owens about his reinstatement. According to the Complaint, instead of reinstating Owens to his former position, L-3 offered Owens a different job in a different country.[1] Owens alleges that he offered to take a lower-paying position so he could remain in Kuwait where his family was located, but L-3 did not

---

[1] Previously, Owens had worked as a Team Lead mechanic at a helicopter blade shop in Kuwait; following the Management Review Panel's decision, L-3 informed him that he would be the "Team Lead of Back Shop" at a site in Iraq. (Zody e-mail of May 27, 2011, Compl. Ex. 18, ECF No. 18-1).

permit him to do so.  (Compl. 8 (¶36); Owens and Zody e-mails, Compl. Exs. 19, 20, ECF Nos. 19, 20).

The details are not completely clear from the Complaint, but it appears that the parties continued to dispute the terms of Owens's reinstatement for some period of time.[2]  On May 14, 2011, Owens filed a charge of discrimination with the EEOC, alleging discrimination based on race and retaliation.  (Compl. Ex. 1, ECF No. 1-1).  Owens asserted in the EEOC charge that he believed he was discharged because of his race (Black), and that he was retaliated against in violation of Title VII.  The charge notes that similarly-situated White employees were treated differently than Owens.  (*Id.*)  Owens's EEOC charge remained pending until August 2012, when the EEOC issued a dismissal and "right to sue" letter to Owens.  (Compl. Ex. 2, ECF No. 1-2).

In the meantime, while his EEOC charge was still pending, Owens submitted a Demand for Arbitration to the American Arbitration Association.  In his Demand, filed October 17, 2011, Owens alleged claims of breach of contract, tortious breach of contract, breach of duty of good faith and fair dealing, and tortious interference with contract and business relations.  (Def. Ex. 2, 3-10, ECF No. 23).  The Demand also sought punitive damages.  The claims proceeded to arbitration, and the arbitrator entered a Final Award in favor of Owens on August 20, 2012.  (Def. Ex. 3,

---

[2] According to Owens, L-3 eventually offered to place him in his former position in April 2012, but did so only the day before L-3 lost its government contract in Kuwait.  (Compl. 9 (¶39), ECF No. 1).

ECF No. 24).  The arbitrator awarded damages to Owens for breach of contract and
tortious breach of contract, as well as punitive damages.  (*Id.*)

Approximately one week after the arbitrator entered the Final Award, on
August 28, 2012, the EEOC issued its Dismissal and Notice of Rights to Owens.
Owens timely exercised his right to file a lawsuit against L-3 under Title VII, and
filed his Complaint in this action on November 15, 2012.

DISCUSSION

L-3 seeks to compel this matter to arbitration on two grounds:  (i) that Owens
is seeking to litigate Title VII claims involving the same employment actions that
were previously adjudicated by the arbitrator, and he should be estopped from
litigating parallel claims outside of arbitration; and (ii) that the confidentiality
requirements of the ADR Program, and the arbitrator's Final Award, prohibit L-3
from disclosing the remedies Owens obtained in arbitration.  (Mem. in Support of
Mot. to Compel Arbitration, ECF No. 20).  It argues that, because the relief Owens
obtained through arbitration is confidential, the only way to resolve the issue of
whether the relief he seeks in this Title VII lawsuit has already been adjudicated by
the arbitrator is to return the matter to arbitration, and compel Owens to arbitrate
the Title VII claims.  (Def. Mem. 2, ECF No. 20).

In response, Owens argues that he did not agree to arbitrate his Title VII
claims and was not required to do so under the ADR Program.  He also contends
that the confidentiality requirement of L-3's ADR Program does not mandate that
these proceedings be sent to arbitration.

4

For the reasons stated below the Court finds that neither of L-3's arguments in support of its Motion are sufficient to establish that Owens must be compelled to submit his Title VII claims to arbitration.

*Confidentiality Requirement*

The confidentiality requirements of L-3's ADR Program and the arbitrator's Final Award do not preclude this Court from adjudicating Owens's Title VII claims. The confidentiality provision of the ADR Program states, in pertinent part: "All aspects of the ADR Program, including the hearing and record, if any, of the proceedings are confidential and shall not be open to public, except under the following circumstances . . . [a]s may be required in any subsequent proceedings between the parties." (ADR Program 11-12 (¶9), ECF No. 20-1). This litigation constitutes "subsequent proceedings between the parties," and therefore, to the extent it becomes necessary to review information in the arbitration record, the confidentiality requirement does not apply. When L-3 included this exception to its confidentiality provision, it necessarily contemplated that "subsequent proceedings" such as this one may require disclosure of the arbitration record. Additionally, the arbitrator's "admonition of confidentiality" is not a basis on which to compel the plaintiff to arbitrate his Title VII claims. In the Final Award, the arbitrator directed the parties to comply with the contractual confidentiality provisions of L-3's ADR Program. (Final Award 36, ECF No. 24).[3] There is nothing in the

---

[3] The arbitrator also addressed the issue of what the parties could and could not say about Owens's employment and termination in the context of Owens's

arbitrator's Final Award that would suggest that the confidentiality provision's exception for "subsequent proceedings between the parties" is inapplicable to this lawsuit.

*Estoppel of Plaintiff's Litigation of Title VII Claims*

The Court is also not persuaded that the plaintiff should be estopped from litigating his Title VII claims in this Court, and that he should be compelled instead to submit them to arbitration.  Under the plain language of the ADR Program L-3 mandated for its employees, Title VII claims are excluded from the arbitration requirement.  L-3 admits that the program does not require employees to arbitrate Title VII claims.   (Def. Mem. 3, 5, 6, ECF No. 20; ADR Program 2 (¶4D), ECF No. 20-1).  Thus, as a simple of matter of contract interpretation, Owens could not be compelled to arbitrate Title VII claims.

L-3's argument, however, is that Owens chose arbitration as the venue to adjudicate his wrongful termination and failure-to-reinstate claims, and "regardless of the theory of recovery," the same employment actions are at issue in this Title VII lawsuit. (Def. Mem. 5, ECF No. 20).  Therefore, L-3 asserts, Owens should be estopped from bringing Title VII claims in separate litigation.  The only authority L-3 cites in support of its estoppel argument is *Grigson v. Creative Artists Agency*, LLC, 210 F.3d 524, 526 (5th Cir. 2000).  The *Grigson* decision did not address

---

search for new employment.  (Final Award 36, ECF No. 24).  However, this aspect of the arbitrator's decision does not control to what degree the record could be disclosed in subsequent litigation proceedings.

whether the doctrine of estoppel precludes litigation of claims previously
adjudicated in arbitration, which is essentially the issue L-3 has raised.  Rather,
the question in *Grigson* was whether a defendant who was a non-signatory to a
contract could compel arbitration under that contract, and the Fifth Circuit
addressed equitable estoppel in that specific context.  That is not the issue here,
and therefore *Grigson* is not applicable to this case.[4]

It is clear from the record that Owens did not arbitrate his Title VII claims,
and he was not required to do so under the terms of L-3's ADR Program.  As noted
above, his charge was still pending with the EEOC when he filed his Demand for
Arbitration.  Owens's Demand for Arbitration makes no reference to race, or racial
discrimination or unlawful retaliation.  The claims set forth in the Demand are
based in contract law and tort law (e.g., breach of contract, tortious breach of
contract).   Likewise, the arbitrator's decision only awarded damages for breach of
contract and tortious breach of contract.  The decision is focused on L-3's stated
grounds for Owens's termination (specifically, the accusation regarding the
company vehicle and whether it was supported by facts), and the problems in
connection with the company's internal review process of his termination.  The
arbitrator's decision does not mention race or race-based discrimination at any

_____

[4] L-3 does not address the law of collateral estoppel or issue preclusion in
support of its estoppel argument.  L-3 simply makes the argument that the
arbitrator's award was predicated on the same employment actions that are at issue
in this Title VII, and therefore this matter should be referred to arbitration.

7

point in the factual or legal findings.

     In order to prove his Title VII claims, which allege a violation of statutory rights, rather than contractual rights, Owens will be required to establish a prima facie case of discrimination based on race, and a prima facie case of retaliation. These involve different criteria from the breach of contract and tortious breach of contract claims adjudicated by the arbitrator.  Owens's Complaint in this action alleges that he was subjected a racially hostile work environment, separate and apart from his retaliation claim, and involves facts that are temporally distinct from his termination.  (Compl. Count One, 4-5 (¶¶20-24)).[5]  There is nothing in the record to suggest that the arbitration proceedings were in any way an adjudication of a hostile work environment claim.  The Court recognizes that the Title VII claims related to Owens's termination arise from the same nucleus of facts reviewed by the arbitrator, who examined whether L-3 breached its contract with Owens when it terminated him.  However, the arbitrator did not consider whether Owens's termination could have been racially-motivated, because that was not an issue in those proceedings.[6]  Thus, the Court does not find that the Title VII claims Owens

---

     [5] L-3 notes that some of Owens's Title VII claims are based on actions that occurred more than 180 days prior to the filing of his EEOC charge.  However, whether or not Owens will ultimately be successful on his Title VII claims, based on statute of limitations issues or otherwise, is not an issue before the Court at this time.  The question of whether any of his claims are time-barred is a consideration for another day, and has no bearing on whether such claims should be compelled to arbitration.

     [6] Indeed, the arbitrator expressly stated that he did not know why Owens was fired. (Final Award 30, ECF No. 24).

makes in this lawsuit have been previously adjudicated by the arbitrator, or that it should compel Owens to arbitrate his Title VII claims on this basis.

The Court understands L-3's concerns about Owens's potential double recovery, or what they have described as "double dipping".  But that is a question of damages at trial.  A properly instructed jury can determine what damages, if any, Owens may properly receive pursuant to his Title VII claims.  Thus, based upon the evidence before it the jury can avoid double recovery by separating and adjusting any Title VII award after consideration of the monetary relief Owens has already received through arbitration.

Conclusion

For the reasons set forth above, the Court does not find that Plaintiff Owens should be compelled to arbitrate his Title VII claims.  The confidentiality restrictions in L-3's ADR Program do not preclude litigation of these claims, and his Title VII claims were not previously adjudicated by the arbitrator.  Moreover, the ADR Program specifically exempted Title VII claims from its arbitration requirement.  Accordingly, the Motion to Compel Arbitration is denied.

**SO ORDERED AND ADJUDGED** this the 12th day of September, 2014.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE